IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BAKER HUGHES SERVICES INTERNATIONAL, LLC, | ) ) ) |
| Plaintiff and Petitioner, | ) ) |
| v. | ) Case No. 20-CV-626-TCK-SH ) |
| JOSHI TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) ) |
| Defendant and Respondent. | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff/Petitioner's Baker Hughes Services International, LLC's ("Baker") Motion to Confirm Arbitral Award. (Doc. 5). Defendant/Respondent Joshi Technologies International, Inc. ("Joshi" or "JTI") filed a Motion to Vacate Arbitral Award and Dismiss Plaintiff's Complaint. (Doc. 18, 23). Thereafter, Baker filed a Response (Doc. 28), and Joshi filed a Reply. (Doc. 35). Upon review of the Motions and supporting evidence, the Court makes the following findings and determines that Baker's Motion to Confirm the Arbitral Award is granted and Defendant's Motion to Vacate Arbitral Award and Dismiss is denied.

**I. BACKGROUND**

On December 3, 2020, Baker filed its Motion to Confirm Arbitral Award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 16, 1958, 9 USCS 201 et. seq, (the "Convention" or the "New York Convention"). The arbitral award was entered in Baker's favor against Joshi on December 16, 2019, in Ecuador, South America. The arbitration was conducted pursuant to the arbitration provision contained in the parties' Master Service Agreement (the "MSA"). Ecuadorian Law of Mediation and Arbitration ("LAM") procedure was followed, as explicitly required by the MSA.

In addition to providing for arbitration, the MSA generally set forth the terms by which Baker agreed to furnish goods to Joshi necessary for Joshi's oil and gas work on a mineral formation known as the Puma Block in Ecuador, South America. The MSA was signed on January 17, 2013, between Baker Hughes Services International, Inc.[1] and a consortium of two companies known as Consorcio Pegaso (hereinafter the "Pegaso Consortium" in English).

The Pegaso Consortium was a partnership of (1) Joshi and (2) partner company Campo Puma Oriente S.A ("Campo"). Joshi has acknowledged that it held interests not only in the Pegaso Consortium generally, but also in its partner company Campo. To that end, Baker's arbitration award holds not only that Joshi contracted with Campo to be jointly and severally liable (Joshi and Campo's 2011 "Reform" agreement) for Baker's unpaid invoices, but also that at the time of arbitration award, Joshi remained registered with Ecuador's Hydrocarbon Secretary as a legal member of the Pegaso Consortium. Consequently, the arbitrator entered the award jointly against Joshi, the Pegaso Consortium, and Campo. The arbitrator also noted that the arbitration was "very simple. A company supplied goods and provided services to another. The latter has not paid." (Exhibit 1, Arbitration Award ¶34).

Baker contends Joshi submits the same argument to this Court, which the parties' arbitrator explicitly rejected as incorrect – namely that Joshi believes it should not be bound by the MSA. "More specifically, Joshi attempts to re-argue the substantive merits already decided at arbitration:

---

[1] There is some discrepancy whether Baker should be allowed to recover as a corporation or limited liability company, as the MSA mistakenly lists Baker as "Inc." rather than "LLC." However, the arbitration award corrects this mistake in both the caption and the body of the Arbitration Award. See *Griffin v. Griffin*, 1992 OK 36, 832 P.2d 810 (Remedy of reformation is appropriate where, by reason of unintentional mistake by scrivener or draftsman, written agreement, such as trust, does not accurately reflect intent of grantor*.); see also, GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, et al.*, 140 S.Ct. 1637, 1643 (2020)(the Federal Arbitration Act requires federal courts to place arbitration agreements upon same footing as other contracts and does not alter background principles of state contract law.).

2

first that the Pegaso Consortium signed the MSA rather than Joshi, and second that Joshi's interest in both the Pegaso Consortium and Campo were acquired in 2016 by a third company, Gammon India Limited ("Gammon") such that Joshi alleges it should no longer be responsible for the debt to Baker." (Doc. 28, Plaintiff's Response at 2).

## II. ANALYSIS

United States district courts have original jurisdiction over actions or proceedings arising under the Convention. *See* 9 U.S.C. § 203. Any party to an arbitration may apply to a district court for an order confirming an arbitral award within three years of the arbitral decision. Id. § 207; *see also Ukrvneshprom State Foreign Exon. Enter. v. Tradeway*, Inc., 1996 WL 107285, at 2 (S.D.N.Y. 1996); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 1997 WL 560044, at 4 (2d Cir. Sept. 10, 1997) (quoting 9 U.S.C. § 207). Confirmation of an international arbitral award is a summary proceeding rather than a substantive rehearing on the merits. "The court shall confirm the award unless it finds one of the grounds for refusal . . . of the award specified in the said Convention." 9 U.S.C.A. § 207. The party opposing confirmation bears the burden of proving that one of the seven grounds enumerated in Article V applies and provides a basis for the court to refuse to confirm the arbitration award. *Parsons v. Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 973 (2d Cir. 1974); *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004).

The seven grounds are as follows:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

  b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

  (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

  (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

  (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

  2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

  (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

  (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

*Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1286–87 (10th Cir. 2020) (emphasis supplied).

**A. Validity of the Arbitration Agreement**

The Court finds Joshi has not shown the Arbitration Agreement is invalid based on the enumerated grounds referenced in the New York Convention at Article V(1)(a). First, Joshi argues that it did not consent to arbitration because Joshi did not sign the MSA. However, the MSA was signed by Baker Hughes Services International, Inc. and the Pegaso Consortium. The Pegaso Consortium was composed of two companies: (1) Joshi and (2) Campo. The Declaration of Sadanand D. Joshi acknowledges that Joshi held interests not only in the Pegaso Consortium

4

generally, but also in its partner company Campo. Joshi Declaration at ¶9 ("Gammon had the right of first refusal to acquire all of JTI's interest in both Campo…and in Consorcio Pegaso."). Additionally, the arbitral award expressly references Joshi and Campo's Reform agreement which specified that Joshi "agreed to jointly and severally respond in full compliance with the obligations they acquire and derive from the Puma Block Service Contract, which refers to obligations with the State [of Ecuador] and as subcontractors, such as those contained in the Master [Service] Agreement that is the reason for this litigation." Arbitration Award at ¶¶18-19. Further, Joshi remained registered with Ecuador's Hydrocarbon Secretary as a member of the Pegaso Consortium "so legally it continues to be part of the Consortium." Id. at ¶ 55. [2]

With regard to Gammon's alleged acquisition of Joshi, Joshi has provided no evidence that Baker agreed to release Joshi of its debts and instead collect from Gammon. To that end, the MSA requires that Joshi receive written approval from Baker before transferring any rights or obligations to Gammon. MSA § 14. Therefore, the Court finds Joshi's contention that it did not consent to the MSA or the MSA arbitration section is without merit.

**B. Subject-Matter Jurisdiction**

Second, Joshi argues that the arbitral award should not be confirmed because this Court lacks subject-matter jurisdiction. Specifically, Joshi contends Baker has not provided an original or certified copy of the arbitral agreement and award. Joshi claims the translator certification was made by the translating company rather than the individual translator.

Article IV of the New York Convention requires petitioners submit (a) the authenticated original award or a duly certified copy thereof, (b) the original arbitration agreement or a certified

---

[2] Also of note, Joshi, the Pegaso Consortium, and Campo were all properly served summons in the underlying Ecuadorian litigation, and all summons were served at the same office located at the same address. Arbitration Award at ¶¶4-6.

copy thereof, and (c) if the document is written in another language, a translation of the aforementioned documents certified by an official or sworn translator. New York Convention Art. IV. Where there are no true signs of concern of jurisdiction or authenticity, relying on Article IV to deny recognition has been classified as "merely grasping at straws, attempting to persuade the Court to refuse to confirm the award on the basis of a mere technicality." *Arbitration Between Overseas Cosmos, Inc. v. NR Vessel Corp.,* No. 97 CIV. 5898(DC), 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997).

Here, Baker has provided a translation of the certified arbitral award; a translation of the MSA; and certifications for both, verifying under oath that the translations are accurate as a publication quality translation. Joshi admits that it was aware of the MSA before or during arbitration and that Mr. Joshi understands that "the reference to an MSA in the Complaint filed in this action, is the same document referred to as the Master Agreement." Joshi Declaration ¶ 4; *see also* Fed. R. Civ. P. 44(a)(2)(C) (record deemed authentic upon a showing that all parties had a reasonable opportunity to investigate the record's authenticity and accuracy); Notes of Advisory Committee on Rules-1966 Amendment; Fed. R. Civ. P. 44(a)(2) (admitting a document that "on its face, appears to be an official publication . . . unless a party opposing its admission into evidence shows that it lacks that character.").

Joshi does not dispute that the arbitral award and arbitral provisions are not legitimate and authentic. Instead, Joshi objects that procedural or evidentiary requirements were not followed.

The admissibility of a translation is determined based on its accuracy. *United States v. Garcia*, 20 F.3d 670, 673 (6th Cir. 1994) ("In asking us to find the admission of the translation an abuse of discretion, Juan Garcia does not point to any inaccuracies in it, nor has he offered an alternative translation."). More broadly, courts do not intensely inquire into the manner of

interpretation and routinely approve translations from reputable commercial translators. *Estate of Ke Zhengguang v. Yu Stephany,* No. 18-3546-PWG, 2020 WL 886146, at *2 n.7. (D. Md. Feb. 24, 2020) (approving a translation on the basis that the translator was an employee of Morningside Translations, a reputable international translation firm). Baker also notes that the arbitral award as translated includes a certified signature from the tribunal registrar. *See* Arbitral Award p. 16-17 (in accord with Fed. R. Evid. 902). Accordingly, the Court finds Baker has satisfied the requirement to provide a certified copy of the arbitral agreement and award.

Finally, Joshi asserts the arbitrator in Ecuador did not have the authority to determine whether or not there was an agreement to arbitrate. However, the parties arbitrated pursuant to Ecuadorian LAM procedure, which provides the arbitrator, rather than this Court, with discretion to determine the threshold question of arbitrability. The "question of arbitrability arises only in two circumstances-first, when there is a threshold dispute over whether the parties have a valid arbitration agreement at all, and second, when the parties are in dispute as to whether a concededly binding arbitration section applies to a certain type of controversy." *Pirito v. Penn Eng'g World Holdings*, 833 F. Supp. 2d 455, 467 (E.D. Pa. 2011), supplemented, 947 F. Supp. 2d 489 (E.D. Pa. 2013).

Joshi cites *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), to support the proposition that this Court must decide whether Joshi was obligated to arbitrate Baker's claim in the first place.[3] However, *First Options* does not address international arbitration awards, as is the case here. When analyzing international arbitrability, courts have stated that foreign arbitrators –

---

[3] Notably, Joshi never moved to enjoin the arbitration. Instead of proceeding with arbitration in Ecuador, Joshi could have moved to enjoin arbitration before it occurred, or at a minimum enjoin the arbitration after the arbitrator held he had competent jurisdiction to proceed. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (Party sought to enjoin arbitration and clarify arbitrability before arbitration occurred.).

not the court during subsequent award confirmation proceedings – may determine arbitrability. *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 287 (3d Cir. 2003) ("There nonetheless may be reason to think that the international posture of this case removes it from the scope of *First Options*. For example, international arbitration rules tend to favor the rule of competence-competence (sometimes known as kompetenz-kompetenz)—the principle that gives arbitrators the power to decide their own jurisdiction—more than American arbitration rules.").

Here, the MSA arbitration provision requires disputes be resolved pursuant to LAM procedures. MSA ¶17. This is precisely what the arbitrator did. Arbitral Award ¶ 15 (substantiation hearing held in accordance with the provisions of article 22 of LAM) & ¶16 (at substantiation hearing the parties "present[ed] their positions on the objection of incompetence."). Baker and Joshi's arbitrator explicitly held that "in application of the kompetenz-kompetenz principle, the Sole Arbitrator declared himself COMPETENT to hear, in equity, the present case in relation to the claims against all the Defendants." Arbitral Award ¶23.

The Third and Sixth Circuits recently considered similar issues of arbitrability, finding that when an arbitration provision incorporates a particular set of arbitration rules, the procedure of those rules governs. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir 2020) (AAA Rules governed, which allowed arbitrator to decide issue of arbitrability); *Richardson v. Coverall N. Am., Inc.,* 811 F. App'x 100, 103 (3d Cir. 2020) ("Defendants argue that the incorporation of the AAA Rules in Silva's arbitration clause constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability. We agree.") Here, the parties agreed that LAM governed. As evidenced by the arbitrator's findings, LAM was applied and allowed Baker

and Joshi's arbitrator to determine arbitrability. Therefore, Joshi's obligations to Baker were properly adjudicated at arbitration.

Finally, even if this Court were to decide arbitrability, it is clear from the parties' MSA that Joshi intended to arbitrate disputes related to non-payment under the MSA. MSA § 17 ("All disputes arising from or relating to this CONTRACT or the products/services provided herein ("DISPUTES"), must be resolved by means of a conclusive and final arbitration award…."). Likewise, Joshi's objection to application of LAM is also mistaken. As stated *supra*, the parties' MSA arbitration provision is explicit that arbitration should be conducted pursuant to LAM principals. To that end, the arbitral award makes clear that the governing Equatorial law applies the competence-competence principal, allowing the arbitrator to determine if he or she has subject-matter jurisdiction to arbitrate the matter.

**CONCLUSION**

"Confirmation of a foreign arbitration award is proper under 9 U.S.C. § 207 if (1) the party moving for confirmation of the arbitration award has complied with the requirements of the Convention; and (2) the party opposing the motion has failed to show the existence of any of the grounds stated in Article V of the Convention that would bar confirmation of the arbitration award." *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n. (Bermuda) Ltd.,* 1995 WL 361303, at 1 (S.D.N.Y. 1995) *aff'd,* 79 F.3d 295 (2d Cir. 1996). Both prerequisites are satisfied in this case for the reasons set forth above.

Accordingly, Plaintiff/Petitioner's Baker Hughes Services International, LLC's Motion to Confirm Arbitral Award (Doc. 5) is granted, and Defendant/Respondent Joshi Technologies International, Inc.'s cross-motion to Vacate Arbitral Award and Dismiss Plaintiff's Complaint (Doc. 18, 23) is denied. Plaintiff/Petitioner shall submit a proposed judgment within seven days.

**IT IS SO ORDERED this 2nd day of September, 2021.**